# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| NANCY WHARTON, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br> Commissioner of Social Security, )<br>   Defendant. ) | Civil Action No. 2:09cv00068<br>**REPORT AND<br>RECOMMENDATION**<br><br>By:   PAMELA MEADE SARGENT<br>UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Nancy Wharton, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 1381 *et seq*. This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Wharton protectively filed her application[1] for SSI on January 31, 2006, alleging disability as of November 9, 2005, based on chronic obstructive pulmonary disease, ("COPD"), deep vein thrombosis, ("DVT"), shortness of breath and hypertension. (Record, ("R."), at 69, 76.) The claim was denied initially and upon reconsideration. (R. at 57-59, 61, 63-64.) Wharton then requested a hearing before an administrative law judge, ("ALJ"). (R. at 66.) The ALJ held a hearing on November 27, 2007, at which Wharton was represented by counsel. (R. at 41-54.)

By decision dated November 4, 2008, the ALJ denied Wharton's claim. (R. at 24-33.) The ALJ found that Wharton had not engaged in substantial gainful activity since January 31, 2006. (R. at 26.) The ALJ found that the medical evidence established that Wharton had severe impairments, namely traumatic and degenerative joint disease, COPD, hypertension, recurring skin infections (MRSA), gastroesophageal reflux disorder, hypothyroidism, obesity, chronic depression and anxiety, but he found that Wharton's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26, 28.) The ALJ also found that Wharton had the residual functional capacity to perform a limited range of light[2] work, subject to physical, environmental and

---

[1] The record does not contain Wharton's application for SSI.

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also

mental limitations.[3] (R. at 29.) Thus, the ALJ found that Wharton could perform her past relevant work as a medical transcriber. (R. at 29, 32.) Thus, the ALJ found that Wharton was not under a disability, as defined under the Act, and was not eligible for benefits. (R. at 32.) *See* 20 C.F.R. § 416.920(f) (2010).

After the ALJ issued his decision, Wharton pursued her administrative appeals, (R. at 20), but the Appeals Council denied her request for review. (R. at 13-16.) Wharton then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2010). This case is before the court on Wharton's motion for summary judgment filed April 29, 2010, and the Commissioner's motion for summary judgment filed May 27, 2010.

## II. Facts

Wharton was born in 1955, (R. at 85), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R.§ 416.963(d). Wharton has a high school education and two years of college education. (R. at 74.) She has past relevant work experience as a medical transcriptionist, an office manager and a cleaner. (R. at 70.)

---

can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2010).

[3] The ALJ found that Wharton could not climb ladders, scaffolds or ropes, that she had an inability to engage in prolonged walking and standing, which should not exceed two hours in an eight-hour workday, that she could only occasionally climb stairs and ramps, balance and crawl, that she should avoid any exposure to respiratory irritants, hazardous heights and moving machinery, that she was moderately limited in her ability to relate with other people and that she was mildly to moderately limited in her ability to concentrate. (R. at 31.)

Robert Jackson, a vocational expert, testified at Wharton's hearing. (R. at 52-53.) Jackson classified Wharton's past work as a cleaner as light and unskilled and her job as a medical transcriptionist as sedentary[4] and skilled. (R. at 52-53.)

In rendering his decision, the ALJ reviewed records from Dr. Anthony Onyegbula, D.O.; Southwest Regional Medical Center; Dr. Debbie R. Brewer, M.D., Ph.D.; Dr. John Heard, M.D., a state agency physician; Southwest Virginia Regional Cancer Center; Dr. Sapna Patel, M.D.; Dr. Thomas E. Renfro, M.D.; and Dr. Robert McGuffin, M.D., a state agency physician. Wharton's attorney submitted additional medical reports from CVS Pharmacy; Medical Associates of Southwest Virginia; Wellmont Bristol Regional Medical Center; and Dr. Maurice E. Nida, D.O., to the Appeals Council.[5]

Wharton was treated by Dr. Anthony Onyegbula, D.O., from August 2005 through August 2006. (R. at 121-52, 166-253, 262-91.) On November 9, 2005, Wharton was admitted to Southern Regional Medical Center with a diagnosis of methicillin-resistant staphylococcus aureus, ("MRSA"). (R. at 363-78.) X-rays of Wharton's lumbar spine showed traction spurs in the mid and lower lumbar levels,

---

[4]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 416.967(a) (2010).

[5]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 13-16), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

and interspaces were mildly narrowed at the L2-L3 and L4-L5 levels. (R. at 149.) A CT scan of Wharton's abdomen and pelvis showed bibasilar pleural parenchymal changes of uncertain age and a small area of infiltrate in the middle lobe of her right lung. (R. at 144.) On November 10, 2005, an MRI of Wharton's hips showed extensive soft tissue swelling and an abnormal increased signal with heavily T2 weighted images at the left hip, which appeared to be post-traumatic changes versus an inflammatory process. (R. at 142, 146.) A bilateral lower extremity venous ultrasound showed acute profunda femoris vein thrombosis on the left lower extremity and no evidence of chronic DVT in the right lower extremity. (R. at 141.) A CT scan of Wharton's chest showed no evidence of obstruction. (R. at 137.) Bilateral scattered areas of airspace disease, probably related to an inflammatory etiology, and scattered bilateral pulmonary nodules also were noted. (R. at 137, 139, 143, 145, 148, 152.) A CT scan of Wharton's head was normal. (R. at 136.)

On January 20, 2006, Wharton complained of vomiting and a rash. (R. at 285.) Dr. Onyegbula noted that Wharton had tenderness and swelling of the right index finger. (R. at 285.) Dr. Onyegbula admitted Wharton for MRSA and DVT. (R. at 286-87, 358-61.) On February 20, 2006, Wharton complained of joint pain and generalized pain throughout her body. (R. at 281.) She was diagnosed with an upper respiratory infection and DVT. (R. at 281.) On March 6, 2006, Wharton complained of experiencing blackouts, vomiting, dizziness and nausea. (R. at 280.) On March 22, 2006, Wharton complained of back pain which radiated to her feet, right hand pain and numbness, cough, congestion and fever. (R. at 278.) In April 2006, Wharton reported no complaints. (R. at 274, 277.) On May 1, 2006, Wharton reported that she "feels ok." (R. at 275.) On May 15, 2006, Wharton complained of severe pain in her

lower back and legs and generalized joint pain. (R. at 273.) She had tingling and tenderness in all joints. (R. at 273.) Dr. Onyegbula diagnosed chronic pain syndrome and DVT. (R. at 273.) On June 12, 2006, Dr. Onyegbula diagnosed chronic pain syndrome. (R. at 271.)

By letter dated September 1, 2006, Dr. Onyegbula reported that Wharton initially presented with swollen lower extremities, which was determined to be DVT. (R. at 291.) During a hospital stay, Wharton developed pneumonia and MRSA. (R. at 291.) He reported that during the previous year, Wharton had numerous skin and blood infections and that she had developed chronic pain syndrome. (R. at 291.) He reported that Wharton's pain was structural and neuropathic in nature, which required narcotic control. (R. at 291.) Wharton was again hospitalized for DVT, and she had a Green-field filter placed for treatment. (R. at 291.) He also reported that Wharton was on oral anticoagulants and that she would remain on this treatment throughout her life. (R. at 291.) Dr. Onyegbula also reported that Wharton had difficulty ambulating and could not be on her feet for a prolonged period of time. (R. at 291.)

On June 1, 2006, Dr. Debbie R. Brewer, M.D., Ph.D., examined Wharton. (R. at 153-65.) Wharton alleged disability due to COPD, DVT and hypertension. (R. at 153.) Wharton described her pain level as "15/10." (R. at 153.) Wharton reported that she had smoked a pack of cigarettes a day for the previous 20 years, but quit in November 2005. (R. at 154.) She reported that she previously consumed two to three cans of beer a day, but that she no longer consumed alcoholic beverages. (R. at 154.) Dr. Brewer reported that Wharton had difficulty getting on and off the examination table. (R. at 155.) Wharton was alert and oriented. (R. at 155.) Wharton's insight and

judgment were good. (R. at 155.) Her mood and affect was depressed and her memory intact. (R. at 155.) Examination of Wharton's chest showed slight wheezing, no rales or ronchi. (R. at 155.) She had no joint atrophy or crepitus. (R. at 155.) Wharton had normal range of motion of her extremities, except her number two right digit, which had a nodule and hypertrophied bone. (R. at 155.) Bilateral hip forward flexion was decreased to 50 degrees. (R. at 155.) She had normal back range of motion. (R. at 156.) Dr. Brewer diagnosed COPD; asthma; nocturnal hypoxia requiring oxygen; history of severe anemia, dizziness and near syncopal episodes; history of MRSA; history of DVT; hypertension; depression; history of lumbar degenerative joint disease; and history of gastroesphageal reflux disease, ("GERD"). (R. at 156.)

Dr. Brewer reported that Wharton was limited in her ability to perform tasks that involved prolonged standing and walking. (R. at 156.) She also indicated that Wharton was limited in her ability to stoop and to climb stairs and could not perform activities that required excessive exertion. (R. at 156.) Dr. Brewer reported that Wharton may need an assistive device with prolonged ambulation and that she may have difficulty with environmental exposure to cleaning chemicals, food smells and allergens. (R. at 156.) She reported that Wharton may experience social interaction difficulties or problems with functioning at her maximum. (R. at 156.)

On July 7, 2006, Dr. John Heard, M.D., a state agency physician, indicated that Wharton had the residual functional capacity to perform medium work. (R. at 254-61.) He imposed no postural, manipulative, visual or communicative limitations. (R. at 256-58.) Dr. Heard reported that Wharton should avoid concentrated exposure to

fumes, odors, dusts, gases and poor ventilation. (R. at 258.)

On July 7, 2006, Dr. Daniel McDevitt, M.D., evaluated Wharton for an intravenous cholangiogram filter. (R. at 352-54.) Wharton had mild to moderate bilateral lower extremity edema. (R. at 353.) A venous scan showed a femoral vein thrombus and popliteal vein thrombus. (R. at 349-50.)

From December 2006 through November 2007 Wharton was treated by Dr. Thomas E. Renfro, M.D. (R. at 312-15, 322-36, 339-41.) Dr. Renfro's examinations were essentially normal, and he reported that Wharton was stable on medication. (R. at 312-15, 322-26.) Wharton was advised to avoid activities such as weed eating, dishwashing and sweeping. (R. at 324.) On October 22, 2007, Dr. Renfro completed an assessment indicating that Wharton could lift and carry items weighing up to 10 pounds, that she could stand and/or walk up to four hours in an eight-hour workday and that she could do so for up to 30 minutes without interruption. (R. at 346-47.) He reported that Wharton could sit for up to eight hours in an eight-hour workday and that she could do so for 30 minutes to one hour without interruption. (R. at 346.) He reported that Wharton should never climb, stoop, kneel, balance, crouch or crawl. (R. at 347.) Her abilities to reach, to feel, to push and to pull were affected by her impairments. (R. at 347.) Dr. Renfro reported that Wharton should not work around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity or vibration. (R. at 347.)

On October 10, 2006, Dr. Sapna Patel, M.D., of the Southwest Virginia Regional Cancer Center, saw Wharton. (R. at 292-97.) Wharton reported that she

started smoking at age 12 and continued to smoke one half to one pack of cigarettes a day. (R. at 292.) She complained of cough, shortness of breath and chest pain. (R. at 293.) She had no wheezing. (R. at 293.) Her physical examination was essentially normal. (R. at 294.) She had normal range of motion and muscle strength. (R. at 295.)

On November 20, 2007, Wharton reported that she had experienced two episodes of syncope. (R. at 339-41.) Dr. Renfro reported that Wharton needed a thorough examination, including a CT scan of her brain and sinuses. (R. at 341.) Wharton reported that she could not afford to have a CT scan performed due to lack of insurance. (R. at 341.) By letter to Wharton's attorney dated November 20, 2007, Dr. Renfro reported that Wharton had several active medical problems, including fibromyalgia, hypothyroidism, recurrent DVT, probable nasal polyposis, a history of syncope, iron deficiency anemia, asthma, arthritis syndrome, nonspecific neuropathy, chronic pain syndrome secondary to degenerative disc disease and, most recently, recurrent syncope with undetermined etiology. (R. at 338.) He reported that Wharton had marginal to mild improvement with maximum medications and that she would never be able to return to any sort of gainful employment. (R. at 338.) He reported that Wharton had reached maximum medical improvement and that he did not expect her symptoms to improve. (R. at 338.)

On February 5, 2007, Dr. Robert McGuffin, M.D., a state agency physician, indicated that Wharton had the residual functional capacity to perform light work. (R. at 316-21.) Dr. McGuffin reported that Wharton could occasionally climb ramps and stairs and frequently balance, stoop, kneel, crouch and crawl. (R. at 318.) He imposed

no manipulative, visual or communicative limitations. (R. at 318-19.) Dr. McGuffin opined that Wharton should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards, such as machinery and heights. (R. at 319.)

On May 15, 2008, Dr. Maurice E. Nida, D.O., examined Wharton. (R. at 409-11.) Dr. Nida reported that Wharton appeared to be vision impaired and had osteoarthritis in the hands. (R. at 410.) When Wharton requested pain medication, Dr. Nida explained that he was not accepting chronic pain patients. (R. at 410.) On July 22, 2008, Dr. Nida reported that Wharton exhibited no evidence of anxiety or depression. (R. at 407.) Wharton's examination was deemed normal. (R. at 407-08.) On October 13, 2008, Wharton reported that she was "doing very well." (R. at 406.) On December 8, 2008, Wharton's examination was normal. (R. at 404-05.) She was diagnosed with acute upper respiratory infection, history of pulmonary embolus, history of arsenic poisoning, neuropathy, osteoarthritis with chronic pain management, hypothyroidism, depression, hyperlipidemia, COPD, a vision impairment and anemia. (R. at 404.)

On July 30, 2009, Dr. Nida completed a mental assessment indicating that Wharton had an unlimited ability to follow work rules, to relate to co-workers and to maintain personal appearance. (R. at 429-30.) Dr. Nida reported that Wharton had a limited, but satisfactory, ability to deal with the public, to interact with supervisors, to maintain attention and concentration, to understand, remember and carry out simple instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 429-30.) He indicated that Wharton was seriously limited, but not precluded, in her ability to use judgment, to deal with

work stress and to understand, remember and carry out detailed instructions. (R. at 429-30.) Dr. Nida found that Wharton had no useful ability to function independently or to understand, remember and carry out complex job instructions. (R. at 429-30.)

That same day, Dr. Nida completed a medical assessment indicating that Wharton had the ability to lift and carry items weighing up to 10 pounds and to stand and/or walk for a total of up to 20 minutes, but for only 15 minutes without interruption. (R. at 431-32.) Dr. Nida indicated that Wharton could sit for a total of up to 15 minutes and for 15 minutes without interruption. (R. at 431.) He indicated that Wharton should never climb, stoop, kneel, crouch or crawl but could occasionally balance. (R. at 432.) Dr. Nida found that Wharton's ability to handle, to feel, to push, to pull, to see and to speak were affected by her impairments and that she could not work around moving machinery, temperature extremes, chemicals, dust, fumes, humidity and vibrations. (R. at 432.)

On August 6, 2009, Wharton was admitted to Wellmont Bristol Regional Medical Center for complaints of mouth pain. (R. at 7-12.) She was discharged on August 12, 2009, with diagnoses of a right maxillary abscess, Ludwig's angina,[6] DVT and hypertension. (R. at 7.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20

---

[6]Ludwig's angina is defined as cellulitis of the submandibular spaces of the mouth, usually spreading to the sublingual and submental spaces. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 475 (1995.)

C.F.R. § 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated November 4, 2008, the ALJ denied Wharton's claim. (R. at 24-33.) The ALJ found that the medical evidence established that Wharton had severe impairments, namely traumatic and degenerative joint disease, COPD, hypertension, recurring skin infections (MRSA), GERD, hypothyroidism, obesity, chronic depression and anxiety, but he found that Wharton's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404,

Subpart P, Appendix 1. (R. at 26, 28.) The ALJ also found that Wharton had the residual functional capacity to perform a limited range of light work. (R. at 29.) Thus, the ALJ found that Wharton could perform her past relevant work as a medical transcriber. (R. at 29, 32.) Thus, the ALJ found that Wharton was not under a disability, as defined under the Act, and was not eligible for benefits. (R. at 32.) *See* 20 C.F.R. § 416.920(f).

Wharton argues that the ALJ's residual functional capacity determination is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-19.) In particular, Wharton argues that the ALJ erred by failing to order a consultative psychological evaluation. (Plaintiff's Brief at 11-12.) Wharton further argues that the ALJ erred by failing to properly consider her allegations of pain. (Plaintiff's Brief at 17-19.) Wharton also argues that the ALJ erred by failing to give proper weight to the opinions of her treating physician, Dr. Renfro. (Plaintiff's Brief at 19-23.) Wharton further argues that the evidence presented to the Appeals Council provided a basis to remand her case for consideration of her mental impairment. (Plaintiff's Brief at 13-15.)

The ALJ in this case found that Wharton had the residual functional capacity to perform a limited range of light work. (R. at 29.) The ALJ found that Wharton could not climb ladders, scaffolds or ropes, that she had an inability to engage in prolonged walking and standing, which should not exceed two hours in an eight-hour workday, that she could only occasionally climb stairs and ramps, balance and crawl, that she should avoid any exposure to respiratory irritants, hazardous heights and moving machinery, that she was moderately limited in her ability to relate with other

people and that she was mildly to moderately limited in her ability to concentrate. (R. at 31.)

Wharton argues that the ALJ was required to order a consultative psychological evaluation. (Plaintiff's Brief at 11-12.) It is noted that Wharton did not allege depression or any other mental impairment as a disabling condition in her application for disability benefits. (R. at 69.) She has never been referred to or sought treatment from a mental health professional, and she has never undergone a psychiatric hospitalization. Although Dr. Renfro prescribed Prozac, his treatment notes do not include any mental health diagnosis. (R. at 322-36.) Dr. Brewer noted that Wharton "may" have social interaction difficulties. (R. at 156.) I find that because there is no evidence in the record of Wharton having any mental functional limitations, there was no basis for the ALJ to order a consultative psychological evaluation. The ALJ's duty to develop the record does not require a consultative examination at the government's expense unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision. *See Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977); *see also* 20 C.F.R. § 416.927(c)(3) (2010). I find that because the ALJ had sufficient information in the record to decide Wharton's case, it was not necessary for him to order a consultative psychological evaluation.

While there is no evidence in the record of Wharton having any significant mental functional limitations, I note that the ALJ gave her the benefit of the doubt and found that she had "severe" depression and anxiety and limited her to jobs that allowed for moderate limitations in her ability to relate to other people and mild to moderate limitations in her ability to concentrate. (R. at 26, 31.)

Wharton argues that the evidence presented to the Appeals Council provided a basis to remand her case for consideration of her mental impairments. (Plaintiff's Brief at 13-15.) Reports from Dr. Nida presented to the Appeals Council indicate that Wharton exhibited no evidence of anxiety or depression. (R. at 407, 409.) Regardless, in September 2008, Dr. Nida completed a mental assessment indicating that Wharton had a seriously limited, but not precluded, ability to use judgment, to deal with work stresses and to understand, remember and carry out detailed instructions. (R. at 429-30.) He also indicated that Wharton had no useful ability to function independently and to understand, remember and carry out complex instructions. (R. at 429-30.) Wharton reported to Dr. Nida in October 2008 that she was "doing very well." (R. at 406.) Dr. Nida's treatment notes for December 2008 show that Wharton had no evidence of change in mood, appetite or behavior, and they indicate no confusion, insomnia, anxiety or depression. (R. at 404.) Based on my review of these records, I find that Dr. Nida's treatment notes do not support his mental residual functional capacity assessment. Therefore, I find that Wharton's argument that this evidence provides a basis to remand her case for further consideration is without merit.

Wharton argues that the ALJ did not properly consider her allegation of pain. (Plaintiff's Brief at 17-19.) Based on my review of the ALJ's decision, however, I find that the ALJ considered Wharton's allegations of pain in accordance with the regulations. (R. at 31.) The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and

persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Wharton's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 31.) The ALJ specifically considered Wharton's arthritic condition and its effects. (R. at 31.) The ALJ found that Wharton had severe degenerative joint disease and assessed limitations related to this condition that were supported by the medical evidence. (R. at 26.) The ALJ limited Wharton to jobs that involved no climbing of ladders, scaffolds or ropes, no prolonged walking or standing and only occasional climbing of stairs and ramps, balancing and crawling. (R. at 31.) The evidence does not support any limitation with regard to Wharton's fine manipulation or ability to use her hands. None of Wharton's treating or examining physicians reported that she had any limitations with regard to

the use of her hands.

On October 10, 2006, Dr. Patel reported that Wharton's physical examination was normal. (R. at 294.) Wharton had normal range of motion and muscle strength. (R. at 295.) On April 2, 2007, Dr. Renfro reported that Wharton had been diagnosed with "some sort of arthritic condition, [questionable] type." (R. at 328.) However, he noted that she seemed to be doing "okay" on medication and noted no difficulties with regard to the use of her hands. (R. at 328.) He noted that Wharton was stable on medications. (R. 315, 324, 326.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Although Dr. Brewer noted that Wharton had a nodule and hypertrophied bone on the tip of her right hand's second digit, she also found no limitations with regard to the use of Wharton's hands with normal range of motion and 4/5 grip and pinch strength. (R. at 161-62.) The state agency physicians also opined that Wharton had no manipulative limitations. (R. at 257, 318.)

To the extent that Wharton's subjective complaints were credible, the ALJ significantly accommodated them in assessing her residual functional capacity. Based on Wharton's claims of difficulty with lifting, prolonged standing and walking and postural activities, the ALJ limited her to a limited range of light work. (R. at 31.) The ALJ also took into consideration Wharton's complaints of shortness of breath, depression and anxiety when he limited her to jobs that involved no exposure to respiratory irritants, hazardous heights or moving machinery, that allowed for moderate limitations in the ability to relate to other people and mild to moderate limitations in the ability to concentrate. (R. at 31.) The vocational expert testified that

Wharton's past relevant work as a medical transcriptionist was sedentary. (R. at 52.) Based on this, I find that substantial evidence exists to support the ALJ's residual functional capacity finding and that Wharton could perform her past work as a medical transcriptionist.

Based on the above, I also find that substantial evidence exists to support the ALJ's weighing of the medical evidence.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Wharton's residual functional capacity;

2. Substantial evidence exists to support the ALJ's finding that Wharton could perform her past relevant work as a medical transcriptionist; and

3. Substantial evidence exists to support the ALJ's finding that Wharton was not disabled under the Act.

**RECOMMENDED DISPOSITION**

The undersigned recommends that the court deny Wharton's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   December 21, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE